UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. |
| COMPLETE FINANCIAL SERVICES AND | ) | |
| INSURANCE AGENCY LLC, JERRY | ) | |
| BUFORD, and UNKNOWN OCCUPANTS | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

The United States of America, through its attorney, Morris Pasqual, Acting United States Attorney for the Northern District of Illinois, brings this action against defendants Complete Financial Services and Insurance Agency LLC; Jerry Buford; and unknown occupants, and for its complaint states:

### **Parties**

1. Plaintiff is the United States, landowner, and through the United States Postal Service (USPS), lessor of business property in Oak Park, Illinois.

2. Defendant Complete Financial Services and Insurance Agency LLC ("Complete Financial") is the tenant and lessee of business property in Oak Park, Illinois. Complete Financial formed an Illinois Limited Liability Corporation on May 7, 2020, with its principal place of business in Oak Park, Illinois. Complete Financial was involuntarily dissolved by the Illinois Secretary of State on November 10, 2023.

3.      Defendant Jerry Buford was the sole member of Complete Financial and continues to do business as Complete Financial and to personally hold over and occupy the business property in Oak Park, Illinois.

4.      The United States is unable to determine if there are any other occupants in the property and includes any unknown occupants as parties.

## Jurisdiction and Venue

5.      This court has jurisdiction under 28 U.S.C. § 1345 and 39 U.S.C. § 409(a) because the United States is the plaintiff.

6.      Venue is proper in this district under 28 U.S.C. § 1391(b), which authorizes such actions to be brought in the district where the defendant resides or where a substantial part of the events or omissions giving rise to the claim occurred.  Complete Financial's principal place of business is within the Northern District of Illinois, which is also the district where real property subject to this claim is located.

## Lease Agreement

7.      The United States is the owner of commercial real estate located at 901 Lake Street, Oak Park, Illinois 60604, also known as the Oak Park Main Office.

8.      The United States, through USPS, entered into a lease agreement with Complete Financial on June 1, 2020, where the United States agreed to lease office space located at 901 Lake Street, Suite 207, Oak Park, Illinois.  A copy of the lease agreement is attached as Exhibit A.

9.      The United States, through USPS, subsequently entered into an agreement with Complete Financial to amend the lease to add additional square footage to the lease agreement to include suites 207A and 208.  A copy of the lease amendment is attached as Exhibit B.

10.     Complete Financial paid USPS a security deposit of $800, which may be returned if, among other terms, the lessee is not in default.

11.     Article 3 of the lease agreement requires Complete Financial to submit monthly payments, at the listed rates, by the first of each month.  Exhibit A, para. 3.

12.     Article 3 also states that if the rent is paid more than 10 days late, that the "Lessee shall pay Lessor a late fee of ten percent (10%) of the amount of such payment for each and every instance . . . that Rent is not paid on the Rent Due Date."  Exhibit A, para. 3.

13.     Article 19 of the lease agreement ("Default by Lessee") provides that the Complete Financial is in default if Complete Financial fails to make rental payments and does not cure the non-payment within ten days of written notice by USPS.  Exhibit A, para. 19.

14.     Upon default, USPS may without further notice or demand "enter the Premises and eject Lessee, forcibly or otherwise, without regard to any law or statute to the contrary, dispose of Lessee's personal property in the Premises as deemed in the best interest of the Lessor, and Lessee shall be liable for such damages as Lessor may incur."  Exhibit A, para 19.

15.     Article 11 of the lease agreement states that upon termination of the lease, "Lessee shall (i) vacate the Premises, (ii) remove its personal property therefrom, (iii) yield and place Lessor in peaceful possession . . . and (iv) restore the premises to "broom clean" condition." Exhibit A. para 11(a).

16.     Article 11 also states that if lessee fails to remove property and restore the premises upon termination of the lease, the lessor may remove and dispose any items remaining on the premises without further notice to the lessee, and without any liability or obligation to the lessor. Exhibit A. para 11(b).

17.    Article 11 further states that lessee will reimburse lessor for all costs for removal, storage, disposal and restoration of the premises plus applicable administrative costs.  Exhibit A, para 11(b).

18.    Article 31 of the lease agreement states that provisions of the lease extend to and are binding on lessor and its successors and assigns.

19.    Jerry Buford is the successor of Complete Financial as its sole member and continues to do business as Complete Financial.

## Breach of the Lease Agreement

20.    Complete Financial failed to pay rent for November 2020 and January 2021 through February 2025.

21.    On March 11, 2024, USPS sent a letter to Complete Financial outlining the lease default and demanding that the arrearage be cured by March 21, 2024.  On May 6, 2024, USPS sent an additional notice of default and demand.  A copy of this letter is attached as Exhibit C.

22.    On September 10, 2024, USPS sent a letter to Complete Financial notifying it that, because the arrearage was not cured, that the lease was terminated and that it must vacate the premises by September 13, 2024.  A copy of this letter is attached as Exhibit D.

23.    Complete Financial did not vacate the premises, and it, along with its sole member Jerry Buford, doing business as Complete Financial, continues to occupy the premises.

24.    Complete Financial and Jerry Buford remain indebted for rent payments from November 2020 and from January 2021 through at least February 2025, in breach of Article 3 of the lease agreement.

25.     Complete Financial and Jerry Buford are indebted to USPS in the amount of $41,439.20 for past rent, interest, penalties, and administration fees, calculated through November 1, 2024.  A copy of the certificate of indebtedness is attached as Exhibit E.

**Count I**
**Forcible Entry and Detainer**

26.     The United States realleges and incorporates paragraphs 1 –25.

27.     The United States is entitled to possession of the real property under 735 ILCS 5/9-102(a)(4) because Complete Financial did not pay rent in accordance with the lease agreement, causing USPS to terminate the lease.

28.     The United States demanded that Complete Financial vacate the premises by September 13, 2024, and it has not.

29.     Despite the termination of its lease, Complete Financial are withholding possession of the premises.

30.     Complete Financial is no longer an operating LLC, and the sole member of Complete Financial, Jerry Buford, is doing business as Complete Financial, and is Complete Financial's successor.

31.     Jerry Buford is bound by the terms of the lease agreement as Complete Financial's successor in interest.

32.     Any unknown occupants are occupying the property without the consent of the United States.

WHEREFORE, the United States demands judgment against the defendants Complete Financial and Jerry Buford as follows:

a.  for immediate possession of the property commonly known as 901 Lake Street, Suites 207, 207A and 208, Oak Park, Illinois;

b.  for immediate authority to enter and secure the property commonly known as 901 Lake Street, Suites 207, 207A and 208, Oak Park, Illinois;

c.  for an order authorizing the U.S. Marshal to forcibly evict Complete Financial, Jerry Buford and any unknown occupants from 901 Lake Street, Suites 207, 207A and 208; and,

d.  for such further relief as the court deems appropriate.

**Count II**
**Recovery of Rent and Costs**

33.    The United States realleges and incorporates paragraphs 1 – 32.

34.    Complete Financial and its successor, Jerry Buford, remains indebted in the amount of $41,439.20 for unpaid rent from November 2020 and from January 2021 through February 2025.

35.    Complete Financial and Jerry Buford have been willfully holding over possession of the real property since September 10, 2024, when the United States' demanded possession.

36.    Since Complete Financial and Jerry Buford began willfully holding over the real property, four months' rent has accrued totaling $4,272.

37.    Complete Financial and Jerry Buford have not vacated the premises and has not left the premises in broom clean condition.

38.    The United States is entitled to reimbursement of costs to remove all personal property from the premises and to restore the premises, and to reimbursement for any damages that may not be known until the property is vacated.

WHEREFORE, the United States demands judgment against the defendant Complete Financial and Jerry Buford, as follows:

a.  for judgment in the amount of at least $41,439.20 for unpaid rent, interest, penalties, and administrative fees, plus all rents, interest, penalties, and administrative fees that accrue subsequent to the filing of this action and remain unpaid to date on the account of the leased property;

b.  for additional judgment in the amount of at least $15,127.34 under 735 ILCS 5/9-202 for double the rent owed for the time period between September 13, 2024, through the present in which Complete Financial and Jerry Buford willfully held over the detained area, plus the amount that accrues until Complete Financial and Jerry Buford vacate the premises;

c.  for damages and costs resulting from the removal of personal property and for restoration resulting from damages caused by Complete Financial and Jerry Buford;

d.  costs of suit, including but not limited to, a filing fee of $405.00, as authorized by 28 U.S.C. §§ 2412(a)(2) and 1914(a); and,

e.  for such further relief as the court deems appropriate.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: s/ Julia D. Loper
    JULIA D. LOPER
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-4190
    julia.loper@usdoj.gov

# Exhibit A

 **UNITED STATES POSTAL SERVICE**

**Outlease Agreement**
RMH 6.7.19

| Facility Name/Location | Finance/Sublocation No. | Project Number: |
|---|---|---|
| OAK PARK MAIN OFFICE | 165790-G01 | |
| 901 LAKE STREET | | |
| OAK PARK, IL 60301 | | |

THIS OUTLEASE AGREEMENT ("Outlease"), is entered into by and between the **UNITED STATES POSTAL SERVICE**, hereinafter called Lessor, and **COMPLETE FINANCIAL SERVICES AND INSURANCE AGENCY LLC,** hereinafter called the Lessee, whose address is 901 Lake Street, Suite 207 Oak Park, IL 60301, to use and occupy the property hereinafter described under the terms and subject to the conditions contained herein.

1.  **Premises:** In consideration of the rents, covenants and agreements hereinafter on the part of Lessee to pay, keep, and perform, the Lessor does demise and lease to the Lessee and Lessee hereby leases from Lessor, the following described premises (the "Premises"): The Premises are located in a building (the "Building") having a municipal address of **901 Lake Street Oak Park, IL 60301**. The Premises are located on 2nd floor and the approximate location as described in Exhibit "A" attached hereto and incorporated herein. The parties agree that the rentable area of the Premises is approximately **321** square feet.

2.  **Outlease Term:** The fixed term of this Outlease shall begin on **July 1st, 2020** ("Outlease Commencement Date"), and end on **June 30th, 2025**, unless terminated prior thereto pursuant to the terms hereof (hereinafter referred to as the "Outlease Term").

3.  **Rental Rate:** Beginning on the Outlease Commencement Date and for each calendar month, Lessee shall pay the Lessor rent ("Rent"), as set out in the schedule below, which shall be due and payable on a monthly basis in advance, without demand or set-off, in the amount of:

    3a.

| Months | Monthly Rent | Annual Rent |
|---|---|---|
| 07/01/2020 – 06/30/2021 | $463.00 | $5,556.00 |
| * 09/01/2020 – 10/30/2020 | $0.00 | N/A |
| 07/01/2021 – 06/30/2022 | $477.00 | $5,724.00 |
| 07/01/2022 – 06/30/2023 | $491.00 | $5,892.00 |
| 07/01/2023 – 06/30/2024 | $506.00 | $6,072.00 |
| 07/01/2024 – 06/30/2025 | $521.00 | $6,252.00 |

*Tenant to receive two (2) months of free rent in the month of September & October 2020, provided that Tenant has fully completed his painting per the approved Statement of Work (See Exhibit B) no later than 8/31/20. Local Postmaster to verify completion of work and give final written approval.

A security deposit of **$800.00** is due in advance of the Outlease Commencement Date ("Security Deposit") and must be made payable to the "Disbursing Officer, USPS" and submitted to the Contracting Officer along with signed copies of this Outlease. The Lessor shall hold the Security Deposit until the end of the Outlease Term and shall release the same after the Contracting Officer is satisfied in its reasonable discretion that the Lessee is not in default under this Outlease and has restored the Premises in accordance with Sections 9 and 11.



**UNITED STATES**
**POSTAL SERVICE.**

**Outlease Agreement**
RMH 6.7.19

All payments shall be made payable to the "Disbursing Officer, USPS", and shall contain the following identification number: **165790-G01**.

All Rent payments are due and payable on the 1st of each month ("Rent Due Date") in accordance with the above schedule and should be delivered to the Accounting Service Center, US Postal Service, Disbursing Office, P.O. Box 21888, Eagan MN 55121-0888. **If Lessee fails to pay the Rent or any other payment due to Lessor within 10 calendar days after the Rent Due Date, then (without limiting Lessor's rights and remedies including without limitation Section 18 below) Lessee shall pay Lessor a late fee of ten percent (10%) of the amount of such payment for each and every instance during the Outlease Term and any Renewal Term, if any, that Rent is not paid on the Rent Due Date.**

4.  **Renewal Option(s):** The Outlease shall automatically renew for zero (**0**) terms.

5.  **Termination:** Lessor has the right to terminate and reclaim the Premises at no cost or liability to Lessor by providing Lessee 30 days' written notice. Such termination shall become effective on the date set forth in such notice.

6.  **Use:** Lessee shall use the Premises exclusively for: *General Office Use*. Lessee shall use reasonable care in the occupation and use of the Premises and shall not interfere with Lessor's operations. Lessee, Lessee's agents, employees, invitees and visitors may use the Premises only for lawful purposes consistent with the requirements of applicable laws, codes and regulations, and shall comply fully with the Rules and Regulations Governing Conduct on Postal Property, 39 C.F.R., Part 232, promulgated by Lessor, attached hereto and incorporated herein as Exhibit C ("Lessor Rules") which may be revised from time to time. Lessee agrees not to use the Premises in any way which, in the reasonable judgment of the Lessor, poses a hazard to the Lessor, or other tenants or occupants in the Building, the general public, the Premises or the Building in part or whole. Lessee will not use or occupy the Premises for any disorderly, unlawful or extra-hazardous purposes, or for any purpose that will constitute waste, nuisance or unreasonable annoyance to Lessor or other tenants or occupants of the Building or the general public, or for any purpose prohibited by Lessor's Rules.

7.  **Inspection:** Lessee has inspected and knows the condition of the Premises and agrees to accept same in its 'as is' condition including wear and tear thereafter, with all faults, including defects seen and unseen and all conditions natural and artificial and including environmental conditions, without any representation of any kind, express or implied. Lessee accepts all responsibility to inspect the Premises for patent and latent defects and in entering into this Outlease, Lessee has not been induced by, and has not relied upon, any representations, warranties, or statements, whether express or implied by Lessor, or any agent, employee, or representative of Lessor that are not expressly set forth herein. Lessee's decision to lease the Premises is based solely upon lessee's own inspection, examination and analysis of the Premises. It is further understood that Lessor shall have no liability to Lessee for the condition of the Premises and Lessor leases the Premises to Lessee without any obligation on the part of Lessor to make any additions, improvements or alterations thereto.

8.  **Indemnification:** Lessor shall not be responsible for damages to property or injuries to persons which may arise from or be incident to the use and occupation of the leased Premises, nor for damages to the property or injuries to the person of Lessee or of others who may be on said Premises at Lessee's invitation. Lessee shall indemnify, release and hold Lessor harmless from liability for any and all claims for such damages or injuries to the property, the Premises, or to any persons.

9.  **Repairs, Alterations and Improvements:** Lessee shall not make any additions, improvements, repairs, or alterations to the Premises without the prior written consent of Lessor in each and every instance. If this provision is violated, Lessee is liable for the cost of removal and restoration, plus applicable administrative cost. In the event the Lessor consents to the Lessee making any additions, improvements, repairs, or alterations to the Premises, Lessee shall remain liable for the cost of removal and restoration in accordance with Paragraph 11 below, plus applicable administrative cost.

Lessee acknowledges that the building is historic, and that Lessor is thus subject to certain requirements under the **National Historical Preservation Act** ("NHPA") and approval of the **State Historic Preservation Office** ("SHPO"). Lessor's consent, if granted, for any repairs, alterations or improvements under this Section 9 will be conditioned upon

 **UNITED STATES POSTAL SERVICE.**

**Outlease Agreement**
RMH 6.7.19

Lessor's ability to satisfactorily comply with various requirements of the NHPA and its implementing regulations, including, without limitation, completion of the process under Section 106 of the regulations implementing the NHPA, which compliance shall be at the sole cost and expense of the Lessee. Such compliance and resulting restrictions, if any, on repairs and/or alterations or improvements, shall not be deemed to be unreasonable withholding, conditioning or delay of consent.

Notwithstanding the foregoing, Lessee has requested consent to perform certain improvements to the Premises which consist of a Statement of Work, (hereinafter, "SOW"). Lessor's consent to the Improvements is subject to the following conditions:

a. Lessee shall provide Lessor, for its review and approval, a detailed written scope of work along with one hundred percent (100%) architectural drawings. Lessor will have fourteen (14) business days to respond after receipt of Lessee's properly submitted and complete request for consent or Lessor's failure to respond shall not constitute consent to the Improvements.

b. Lessee shall construct the Improvements at its sole cost and expense and indemnify Lessor in accordance with paragraph eight of the Outlease. In addition, Lessee without any expense to the Lessor, shall identify and comply with all applicable zoning, licensing and permitting requirements, and shall comply with all applicable federal, state, and municipal laws, codes, and regulations, in connection with the Improvements and the performance of work required and/or related to the Improvements. Lessee must take proper safety and health precautions to protect the work, the workers, the public and the property of others. Lessee is responsible also for all materials delivered and for the installation, use, maintenance, repair, and if applicable, removal of such Improvements.

10. **Maintenance:** Lessee shall at its sole cost and expense, maintain in good repair and tenantable condition the Premises which shall include but is not limited to: 1) interior window coverings; 2) walls; 3) floors, floor tiles, and coverings; 4) lights, bulbs, lighting, fixtures; 5) telecommunication services and data services; and 6) Lessee's alterations and Improvements, if any. Lessee shall also be responsible for cosmetic repairs including but not limited to repair and replacement of the carpet, wall and window coverings and painting in the Premises. In the event Lessee fails to maintain the Premises, the Lessor may engage in maintenance and repair of the Premises at Lessee's expense. Lessee shall reimburse the Postal Service for all such costs of maintenance and repair plus applicable administrative costs within ten (10) business days of a request therefor from the Lessor.

Lessor shall, except as otherwise specified herein and except for damages resulting from the act or omissions or the negligence of the Lessee, its employees, agents, contractors, licensees, or invitees, maintain in good repair and tenantable condition the Building shell elements which include: the foundation, roof, structure, and base building systems that service the Premises which include the heating, cooling and ventilation for the building ("HVAC"), electrical, plumbing and life safety systems for the Building, and any and all equipment, fixtures, and appurtenances, whether severable or nonseverable, furnished by the Lessor under this Outlease.

**Janitorial:** Lessee is responsible for janitorial services which includes trash removal within the Premises at Lessee's sole cost and expense.

**Snow removal**: Lessor is responsible for snow and ice removal from sidewalks and entranceways and if parking is part of the Premises, from parking lots, driveways and drive aisles.

11. **Surrender and Restoration:**

a. Lessee assumes all responsibility and liability to restore the Premises. Upon the expiration, or early termination of this Outlease, Lessee shall at its sole costs and expense (i) vacate the Premises, (ii) remove its personal property therefrom, (iii) yield and place Lessor in peaceful possession of the Premises, free and clear of any liens, claims or encumbrances caused by Lessee and (iv) restore the Premises to "broom clean" condition and to as good as a condition that the Premises existed at the commencement of this Outlease, including, without limitation, removal of any alterations, Improvements or additions Lessee made to the Premises which the Lessor requests Lessee to remove, ordinary wear and tear and damage by the elements excepted.



**UNITED STATES POSTAL SERVICE.**

**Outlease Agreement**
RMH 6.7.19

b. In the event Lessee fails to remove its personal property and such alterations, Improvements or additions as may be required to be removed, and restore the Premises to the aforesaid condition stated in this Paragraph 11a. by the expiration or earlier termination of the Term or Renewal Term, (i) then upon Lessor notice to Lessee, such failure shall constitute Lessee's abandonment of all property (personal or otherwise) and items in the Premises, and Lessor may restore the Premises which may include removal of such items and disposal of the same in any manner Lessor deems appropriate, include through sale by such means and on such terms as Lessor determines appropriate, and without further notice and without any liability or obligation to Lessor; and (ii) Lessee shall reimburse Lessor for all costs of such removal, storage, disposal and restoration of the Premises plus applicable administrative costs, upon demand. If Lessee shall fail to so vacate and surrender the Premises to Lessor as aforesaid on or before the expiration of the Outlease Term or any earlier termination date, in addition to any and all remedies that Lessor may have at law or at equity, Lessee shall be deemed to be a holdover tenant.

**12. Sublease and Assignment:**

Lessee shall have no right to assign or sublease this Outlease. Lessee shall neither transfer, or assign this Outlease or any of its rights hereunder, nor sublet the Premises or any part thereof or any property thereon nor grant any interest, privilege or license whatsoever in connection with this Outlease. Any transfer, assignment, or sublease in violation of this clause shall constitute an Event of Default under Paragraph 20.

**13. Taxes and Other Reimbursable Charges:** In the event that any tax which shall include but is not limited to a state or local tax or sales tax, is imposed upon the occupancy, use, possession, or leasehold interest of or in the real property herein leased, the obligation for the payment of the tax will be wholly that of the Lessee. Lessee shall pay the same when due without offset or deduction to payments due to the Lessor. In addition, the taxing authority shall provide evidence of such payment to Lessor.

**14. Insurance:**

a. If the Premises or any part of the Premises is damaged by fire or other casualty resulting from any act or negligence of Lessee or any of Lessee's agents, contractors, invitees, licensees, or employees, rent shall not be diminished or abated while such damages are under repair, and Lessee shall be responsible for the costs of repair not covered by insurance.

b. Lessee shall obtain and furnish to Lessor, at no cost to the Lessor, not later than the Outlease Commencement Date, a commercial general liability insurance policy naming Lessor as an additional named insured. Lessee's insurance coverage must meet the following minimum requirements:

  1) Commercial General Liability Limits

    a. Each Occurrence: $1,000,000

    b. Damage to Rented Premises: $250,000 (each occurrence)

    c. Medical Expense: N/A

    d. Personal & Advertising Injury: N/A

    e. General Aggregate: $2,000,000

The certificate must include the following language under the "Description of Operations" section at the bottom of the certificate: "Written notice must be provided to the United States Postal Service within thirty (30) days of the effective date of any reduction in coverage under, or termination or cancellation of, any of the policies described herein."

c. Lessee shall maintain insurance throughout the Outlease Term and any renewal thereof and furnish a copy of the Certificate to the Lessor upon request and on no less than an annual basis to the Real Estate Specialist at the following address: USPS, Attn: Sean M. Ford, 475 L'Enfant Plaza, SW, Room 6670, Washington, DC 20260-1862. Failure to provide and maintain the aforementioned insurance policy, with the required



**UNITED STATES POSTAL SERVICE**

**Outlease Agreement**
RMH 6.7.19

endorsement, in accordance with this paragraph may result in termination of this Outlease at the option of the Lessor.

d.  In all cases wherein Federal, state or local governmental bodies are asserting they are self-insured, Lessor at its option may approve in writing a waiver of the Insurance requirements in this Section 14. Lessee shall provide Lessor with documentation that is acceptable to Lessor in its sole and absolute discretion of evidence of such self-insurance prior to Lessee's occupancy to satisfy the obligations of this section.

15. **Utilities:** Except for telephone and/or other telecommunication services which includes, but is not limited to, internet and cable services which are Lessee's responsibility, Lessor shall furnish Lessee with all utilities as presently installed in its as-is condition that serve the Premises. Lessor's responsibility includes payment of the utility bills from the service providers. Utilities will include electricity, gas, water and sewer for the Premises.

16. **Entry:** The Lessor reserves the right to enter the Premises at all reasonable hours to inspect it, show same or to make such repairs, additions or alterations as Lessor considers necessary. Exercise of any such right in accordance with the terms of this Section 17 shall not be considered a constructive eviction or a disturbance of Lessee's business or occupancy. Lessor shall provide Lessee with at least 24 hours prior notice of such entry, provided, however, that Lessor shall have the right to enter the Premises without prior notice in the event of an emergency.

17. **Parking:** Lessee shall have access to **0** reserved parking spaces.

18. **Building Hours & Access:** The Building's normal hours of operation are from 7:00 AM to 7:00 PM, local time, Monday through Friday, with the exception of Federal holidays ("Building's Normal Operating Hours"). Access to the Premises is generally available to Lessee 7 days a week, 24 hours a day, 365 days per year, subject to causes beyond the reasonable control of Lessor and subject to change by Lessor.

The parties understand that from time to time and in emergency situations, the Lessor, at its own discretion, may be unable to allow or provide access to the Premises on a 24 hour a day, 7 day a week, 365 days per year basis, and may be unable to provide advance notice of such. In no event shall Lessor be liable to Lessee, its invitees, or other third parties for any damages or losses based on its failure to provide access to the Premises in the case of such emergency. However, to the extent that Lessor is unable to provide uninterrupted access to the Lessee during its Building Normal Operating Hours, the Lessee may be entitled to a rent abatement that is proportionate to the amount of time during which its access is so interrupted, unless such interruption is due to fire or other casualty, Acts of God, acts of a public enemy, riot or insurrection, vandalism, or other similar events or due to the negligent act or omission of Lessee, its agents, contractors, invitees, licensees, or employees.

19. **Default by Lessee:** The occurrence of any one or more of the following events shall constitute a default and breach of this Outlease by Lessee (hereinafter "Event of "Default"): (i) Lessee fails to make any payment of Rent on the Rent Due Date or any other payment required to be made by the Lessee under this Outlease, when due, and such failure shall continue for a period of ten (10) days after Lessor has given Lessee written notice of such failure; or (ii) Lessee abandons the Premises for thirty days or more, or fails to observe or perform any term, covenant, condition or the provisions of this Outlease required to be observed or performed by Lessee, where such failure is not cured to the full satisfaction of the Lessor within 30 days after written notice by the Lessor to Lessee of said failure Upon such Event of Default by Lessee, the Lessor, at its option, without further notice or demand, shall have the right to any one or more of the following remedies in addition to all other rights and remedies provided at law or in equity or elsewhere herein: (a) declare this Outlease ended and terminated and may re-enter the Premises and remove all persons or things therefrom, and the Lessee hereby expressly waives all service of any demand or notice prescribed by any law or statute whatsoever; and (b) Lessor may enter the Premises and eject Lessee, forcibly or otherwise, without regard to any law or statute to the contrary, dispose of Lessee's personal property in the Premises as deemed in the best interest of the Lessor, and Lessee shall be liable for such damages as Lessor may incur.

20. **Quiet Possession:** Lessor covenants and warrants that upon performance by Lessee of its obligations hereunder, Lessor will keep Lessee in exclusive, quiet, peaceable and undisturbed and uninterrupted possession of the Premises during the term of this Outlease.

21. **Recording:** This Outlease shall not be recorded.



**UNITED STATES POSTAL SERVICE.**

**Outlease Agreement**
RMH 6.7.19

22. **Notice:** Any notice, or advice to or demand given hereunder shall be in writing, and shall be sent by certified mail with return receipt or express mail with tracking, provided, however, that electronic notice shall be permitted provided that such electronic notice is confirmed by return electronic mail acknowledgement from the recipient and is followed by notice given by one of the other methods listed above. Notice shall be deemed to have been given or made on the day when the notice is deposited in the mail by certified mail/return receipt requested or express mail with tracking or the date of the electronic submission to the following addresses or to such other address as either party may hereafter from time to time specify in writing for such purpose.

> If to Lessee: Complete Financial Services and Insurance Agency LLC
> 901 Lake Street, Suite 207
> Oak Park, IL 60301

> If to Lessor: Sean Ford, Real Estate Specialist
> 475 L'Enfant Plaza, SW, Room 6670
> Washington, DC 20260-1862

23. **Compliance with Environmental Laws:**

   a. Definitions.

   "**Environmental Laws**" mean all federal, state or local statutes, laws, ordinances, rules or regulations, relating to protection of human health or the environment, including but not limited to (*i*) all laws relating to the release of Hazardous Materials into the air, surface water, groundwater or land, or relating to the reporting, investigation or remediation of, licensing, manufacture, processing, distribution, use, treatment, storage, disposal, transport or handling of Hazardous Materials; (*ii*) all laws pertaining to the protection of the health and safety of employees; and (*iii*) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §9601 *et seq.*; the Hazardous Materials Transportation Act as amended 49 U.S.C. §1801 *et seq.*; the Resource Conservation and Recovery Act, as amended 42 U.S.C. §6901 *et seq.*; and the Federal Water Pollution Control Act, as amended, 33 U.S.C. §1251 *et seq.*

   "**Hazardous Materials**" mean (*i*) any toxic substance or hazardous waste, substance or related material, or any pollutant or contaminant that is or may hereafter be defined as or included in the definition of "hazardous substances," "toxic substances," "hazardous materials," "hazardous waste" or words of similar import under any and all Environmental Laws; (*ii*) petroleum, radon gas, asbestos in any form that is or could become friable, urea formaldehyde foam insulation, transformers or other equipment that contain dielectric fluid containing levels of polychlorinated biphenyls in excess of federal, state or local safety guidelines, whichever are more stringent; and (*iii*) any substance, gas material or chemical that is or may hereafter be defined as or included in the definition of "hazardous substances," "toxic substances," "hazardous materials," "hazardous waste" or words of similar import under any Environmental Laws.

   b. Lessee shall comply with Environmental Laws in the use and occupancy of the Premises. Lessee will not cause or permit the storage, use, generation, or disposition of any Hazardous Materials in, on, or about the Premises and the Building, by Lessee, its agents, employees, or contractors, except in such small amounts as are necessary to conduct Lessee's normal business operations (*e.g.*, cleaning products, inks and toners, and pest control products). Lessee shall not permit the Premises to be used or operated in any manner that may cause the Premises or the Building to be contaminated by any Hazardous Materials in violation of any Environmental Laws. Lessee will immediately advise the Lessor in writing of (i) any and all enforcement, cleanup, remedial, removal, or other governmental or regulatory actions instituted, completed, or threatened pursuant to any Environmental Laws relating to any Hazardous Materials affecting the Premises; and (ii) all claims made or threatened by any third party against Lessee, Lessor, or the Premises relating to damage, contribution, cost recovery, compensation, loss, or injury resulting from any Hazardous Materials on or about the Premises. Notwithstanding the foregoing, in the event any activity of Lessee involves storage on the Premises, shipping to or from the Premises or any use on the Premises of a material, chemical or agent that qualifies as a Hazardous Material under Environmental Laws, Lessee may request Lessor's consent to permit use of such Hazardous Materials on the Premises, which is subject to Lessor's written approval which Lessor may approve or deny in its sole and absolute discretion. If Lessor approves



the use of Hazardous Materials, then Lessee shall comply with all Environmental Laws and shall provide the Contracting Officer with copies of all licenses, permits or authorizations for the use, shipment, storage or transport of the Hazardous Materials as well as copies of any citations or listing of infractions and subsequent corrections by the Lessee. Copies of any changes in any and all licenses or permits must be forwarded to the Contracting Officer. Where more than one environmental law applies, the more stringent shall apply. If any Environmental Laws require the filing of periodic reports by the Lessee, it shall be the obligation of Lessee under this Outlease to file a copy of any such periodic report(s) with the Lessor's Contracting Officer at the same time such report(s) is filed with the federal, state or local government or its assignee.

c.   Lessor reserves the right to inspect the Premises at any reasonable time to ascertain if any Outlease violations occur. If any contamination, violation or hazardous condition, as reasonably determined by the Contracting Officer, occurs due to the handling, use, storage or transfer by Lessee of such Hazardous Materials, whether such contamination, violation or hazardous condition is discovered during the Outlease term or after expiration or termination thereof, Lessee shall be solely responsible for removal or remediation of the hazardous or toxic condition in accordance with Environmental Laws. Notwithstanding any other clause in this Section or in the Outlease, Lessee shall remove all of Lessee's Hazardous Materials from the Premises at the expiration or termination of the Outlease and provide copies of all permits, notices and manifests required for such removal to Lessor. Lessee's failure to comply with the provisions of this paragraph shall be grounds for termination of this Outlease for default. Receipt by Lessor of notices, reports, or any other information or documentation required herein shall not impose any responsibility on Lessor to supervise the affairs of Lessee nor relieve Lessee of its responsibility to comply fully with all applicable laws and regulations. The rights and remedies of Lessor provided in this paragraph are in addition to any other rights and remedies which may be available to Lessor by law or under this Outlease. Lessee hereby indemnifies Lessor and its officers, agents, representatives, and employees from all claims, loss, damage, actions, causes of action, expense and/or liability, including the cost of defense, resulting from, brought for, or on account of any violation of this clause. This indemnity shall survive any termination or expiration of the Outlease Term or any Renewal Term.

**24.  Asbestos Containing Material (ACM):**

For the purposes of this Paragraph 25, "**Asbestos-Containing Material**" (ACM) means any material containing more than 1% asbestos as determined by using the method specified in 40 CFR Part 763, Subpart E, Appendix E. "Friable asbestos material" means any ACM that, when dry, can be crumbled, pulverized, or reduced to powder by hand pressure.

The Premises may, or may not, contain ACM. It is Lessee's responsibility to review the [Asbestos Survey] a copy of which Lessor has provided to Lessee. Lessee acknowledges receipt and review of the complete Asbestos Survey, as evidenced by the cover page and summary of the pages (the entire Asbestos Survey is not included due to its voluminous nature) in Exhibit C attached hereto and incorporated herein. Lessee understands and agrees that the Asbestos Survey is provided for informational purposes only. Should Lessee contract for custodial services or any other services (including construction, repairs, etc.), Lessee shall notify its contractor of the existence of ACM, where applicable, and provide its contractor with a copy of any Asbestos Survey. Neither Lessee nor its contractor or any other party is entitled to rely on the accuracy of the Asbestos Survey.

In the event Lessee performs any alteration, repair or work within the Premises and Lessee subsequently discovers or identifies ACM in the Premises, Lessee shall provide written notice to the USPS Contracting Officer within 48 hours of discovery of the ACM. Lessee agrees at Lessee's sole cost and expense to remove and/or abate any friable ACM and to coordinate all work with Lessor. Lessee further agrees to provide Lessor copies of all documents, including sampling, lab work, tests and test results tests related to the ACM and performance of the work.

Any renovation or alteration performed by Lessee impacting or potentially impacting ACM requires the prior written approval of the USPS Contracting Officer and in the event of such approval Lessee shall coordinate all work with the Lessor. In performance of any work that impacts or potentially impacts ACM, Lessee shall comply with all applicable local, state, and federal laws, as well as all USPS requirements, including USPS asbestos policies, plans, management



**UNITED STATES**
**POSTAL SERVICE**

**Outlease Agreement**
RMH 6.7.19

instructions, and environmental policies ("Lessor Asbestos Requirements"). Lessee must keep complete records of all such activity and transfer them to Lessor at the termination of the Outlease.

Lessee agrees to require its contractor to act only in accordance with Lessor Asbestos Requirements. Should Lessee or any contractor providing services to or at the Premises have any questions or concerns regarding Lessor's Asbestos Requirements, Lessee shall contact Lessor prior to undertaking any action at the Premises.

Lessee hereby indemnifies, releases, and holds harmless Lessor from any and all claims, losses, etc. in any way arising out of any work or activity performed related to this Paragraph 25.

25. **Compliance with Laws:** Lessee shall, and shall ensure that its employees, agents, affiliates, representatives and contractors, identify and fully comply with all laws, including, but not limited to, (i) federal, state, municipal and local laws, codes and regulations, (ii) the rules, orders, regulations and requirements of governmental departments and bureaus, and (iii) all codes, laws, ordinances and regulations of any public authority having jurisdiction over the Premises and pertaining to Lessee's use, occupancy and condition of the Premises and all machinery, equipment and furnishings therein (hereinafter "Laws"). Lessee shall use due care in the occupation and use of the Premises. If any permits are required in order to allow Lessee to lawfully improve the Premises and to occupy and conduct its business in the Premises, then Lessee shall obtain and keep current such permits at Lessee's expense and promptly deliver a copy thereof to Lessor.

26. **Holding Over:** If Lessee occupies the Premises beyond the Outlease Term or any properly exercised Renewal Term, without Lessor's written consent ("Hold Over"), Lessee shall be deemed to occupy the Premises on a month to month basis, terminable by either party on thirty (30) days written notice to the other party and all of the terms and provisions of this Outlease shall be applicable during that period, except that Lessee shall pay Lessor a monthly rental rate equal to one hundred fifty percent (150%) of the monthly rent applicable hereunder at the expiration of the previous Outlease Term or applicable Renewal Term, prorated for the number of days of such holding over. If Lessee refuses to vacate after receiving a notice of termination as provided in this paragraph, Lessee shall be deemed a Lessee at sufferance and Lessor may use self-help, or may institute a forcible detainer or similar action against Lessee or any other party in possession of the Premises, or pursue any other remedy available at law or in equity.

27. **Governing Law:** This Outlease shall be governed, construed and interpreted by, through and under federal law. In the event there is no applicable federal law, the laws of the State of Illinois shall apply.

28. **Final Agreement:** This Outlease terminates and supersedes all prior understandings or agreements on the subject matter hereof. This Agreement may be modified only by a further writing that is duly executed by both parties.

29. **No Waiver:** The failure of Lessor to insist in any one or more instance upon performance of any of the terms, covenants, or conditions of this Outlease shall not be construed as a waiver or relinquishment of the future performance of any such term, covenant, or condition. Lessee's obligation with respect to such future performance shall continue in full force and effect.

30. **Headings:** The headings used in this Outlease are for convenience of the parties only and shall not be considered in interpreting the meaning of any provision of this Outlease.

31. **Successors:** The provisions of this Outlease shall extend to and be binding upon Lessor and Lessee and their respective legal representatives, successors and assigns.

32. **Authority.** Each party represents that it has caused this Outlease to be executed on its behalf as of the date written below by a representative empowered to bind that party with respect to the undertakings and obligations contained herein.

33. **General Conditions**: This Outlease is subject to the General Conditions, attached hereto and incorporated herein as Exhibit E.

34. **Counterparts**. This Outlease may be executed in counterparts, which together shall constitute a single instrument. The parties agree that if the signature(s) of either Lessor or the Lessee on this Outlease or any amendments, addendums, or other records associated with this Outlease is not an original but is a digitally encrypted signature, then such digitally



**UNITED STATES POSTAL SERVICE.**

**Outlease Agreement**
RMH 6.7.19

encrypted signature shall be as enforceable, valid and binding as, and the legal equivalent to, an authentic original wet signature penned manually by its signatory.

**Privacy Act Statement:** Your information will be used to process your Outlease Agreement. Collection is authorized by 39 USC 401. Providing the information is voluntary, but if not provided, we may not process your request. We may only disclose your information as follows: in relevant legal proceedings; to law enforcement when the USPS or requesting agency becomes aware of a violation of law; to a congressional office at your request; to entities or individuals under contract with USPS; to entities authorized to perform audits; to labor organizations as required by law; to federal, state, local or foreign government agencies regarding personnel matters; to the Equal Employment Opportunity Commission; to the Merit Systems Protection Board or Office of Special Counsel; to the Department of the Treasury under the Treasury Offset Program computer matching to establish an identity; and to financial institutions or payees to facilitate or resolve issues with payment services. For more information regarding our privacy policies visit usps.com/privacy policy.

 **UNITED STATES POSTAL SERVICE.**

**Outlease Agreement**
RMH 6.7.19

## ADDENDUM

Additional clauses for properties with a USPS presence and/or other Lessees:


**UNITED STATES POSTAL SERVICE.**

**Outlease Agreement**
RMH 6.7.19

**EXECUTED BY LESSEE this** _Monday_ **day of** _June 1_ , _2020_

## LIMITED LIABILITY COMPANY/LIMITED LIABILITY CORPORATION (LLC)

By executing this Outlease, Lessee certifies that Lessee is not a USPS employee or contract employee (or an immediate family member of either), or a business organization substantially owned or controlled by a USPS employee or contract employee (or an immediate family member of either).

Name of LLC: _COMPPETE FININCIAL SERVICES GNA INSURANCE AGENCY_

By: _JERRY R.BUFORD CEO_                    Signature
Print Name & Title

_____                  _____
Print Name & Title                          Signature

Lessee's Address: _901 LAKE ST Suite 207_
         City: _OAK PARK_
        State: _IL_
       Zip + 4: _60707_
E-mail: _Jeffrybuford2@Gmail.com_

Lessee's Telephone Number(s): _312 618-4787_  FAX: _773 688-5853_

Federal Tax Identification No.: _85-1009209_

_Habert Harrington_                         _Angela Lackett_
Witness                                     Witness

a. All co-owners and all other persons having or to have a legal interest in the property must execute the Outlease.
b. Where the Lessee is an "LLC", the Outlease must be accompanied by documentary evidence affirming the authority of the agent, or agents, to execute the Outlease to bind the "LLC", for which he (or they) purports to act. The usual evidence required to establish such authority is in the form of extracts from the formation documents for the "LLC", including without limitation, the certificate of formation and limited liability company agreement. Such documentary evidence must contain the essential stipulations embodied in the Outlease. The names and official titles of the officers, or members, or agents who are authorized to sign the Outlease must appear in the document.

c. Any notice to Lessee provided under this Outlease or under any law or regulation must be in writing and submitted to Lessee at the address specified above, or at an address that Lessee has otherwise appropriately directed in writing. Any notice to the Postal Service provided under this Outlease or under any law or regulation must be in writing and submitted to "Contracting Officer, U.S. Postal Service" at the address specified below, or at an address that the Postal Service has otherwise directed in writing.



**Outlease Agreement**
RMH 6.7.19

## ACCEPTANCE BY THE UNITED STATES POSTAL SERVICE

Date: _6/10/2020_

**Joseph D. Lowe**
Contracting Officer

Joseph Lowe
Digitally signed by Joseph Lowe
DN: cn=Joseph Lowe, o, ou,
email=joseph.d.lowe@usps.gov, c=US
Date: 2020.06.10 11:44:24 -04'00'

Signature of Contracting Officer

Address of Contracting Officer
475 L'Enfant Plaza, SW, Room 6670, Washington, DC 20260-1862

 **UNITED STATES POSTAL SERVICE.**

**Outlease Agreement**
RMH 6.7.19

### Exhibit A

**Room 207 and 207A** consisting of approximately **321** square feet, in the OAK PARK MAIN OFFICE, 901 LAKE STREET, OAK PARK, IL 60301-1286


**UNITED STATES POSTAL SERVICE**

**Outlease Agreement**
RMH 6.7.19

**Exhibit B**

**Painting - SOW**

| **CertaPro Painters**<br>★ ★ ★ ★ ★<br>**INTERIOR PROPOSAL** | Independent Franchise Owner:<br>CertaPro of Chicago Central<br>805 Lake Street # 264<br>Oak Park, IL. 60301<br>Mobile: (312) 213-5532<br>Fax : (312) 277-0930<br>tryan@certapro.com<br>Office: (708) 588-9925 | Job #: CC0A5000311<br>Date: 05/10/2020<br><br>Customer Address:<br>Jerry Buford<br>901 Lake Street<br>Oak Park*<br>IL 60302<br>Phone: (312) 806-4787<br>Email: jerrybuford1@gmail.<br>com |

*Full Workers Compensation Coverage/$2,000,000 General Liability Insurance*

**SPECIAL NOTES:**
INTERIOR PAINTING - $1,885.00

Cover floors as needed
Patch holes, dents and cracks in ceilings and walls
Caulk as needed
Spot prime all prepped areas

Finish paint all Ceilings:
SW Flat Latex

Finish paint all Walls:
SW Latex eggshell Finish

Paint all Base and Trim:
SW Latex SemiGloss Enamel

CertaPro to provide Labor, Materials and Equipment to complet project
CertaPro to provide Copies of License and Insurances as needed

**SET-UP TO BE DONE:**
Client to:
Remove small and fragile objects.. Remove all wall decorations.. Empty closets & or bookshelves.. Remove drapes and blinds.. Disconnect TV and Electronics
CertaPro will cover and protect:
Floors.. Furniture.. Cabinets/ Fixtures

**PREPARATION TO BE DONE:**
Fill cracks and holes in ceiling, Fill cracks and holes in walls, Caulk gaps and holes in woodwork, Seal stains, Scuff sand trim

**Clean Up**
To be completed in full daily in each room so as to allow customer access. The drop cloths, tools and ladders to be placed in determined location by the customer for safety. The only time cleanup not completed in full is if the customer has agreed to allow painter to leave the room in a certain state so as to allow for more efficient production.

**Notes/Misc**
CUSTOMER SERVICE COMMITMENT: The goal for this job is to provide the best customer experience possible. This is accomplished by being friendly and courteous, by making the client feel part of the process with daily updates and excellent communication, by doing things right the first time, and by respecting your property and your home. We recognize that we are guests.
Due to the initial costs incurred in the work it will be required that the customer pay a deposit of 1/3 of the cost of the job in advance of the start of the work. The balance is due upon completion of the project. In addition,


**UNITED STATES POSTAL SERVICE.**

**Outlease Agreement**
RMH 6.7.19

**TABLE OF CONTENTS**

**INTRODUCTION:**

    Purpose And Scope Of Work
    Laboratory Information
    Industrial Hygienist Information
    Sampling Methodology
    Limitations
    Suspected Materials List
    Glossary

**SECTION A:**

    Building Information
    Functional Area Summary

**SECTION B:**

    Functional Area Survey
    Representative List Of Materials Likely To Contain Asbestos
    General Categories Of Building Areas Inspected

**SECTION C:**

    Inspector's Homogeneous Area Assessment Decision Tree
    Homogeneous Material Codes
    Homogeneous Material Summary By Functional Floor And Area Locations

**SECTION D:**

    Bulk Sample Chain Of Custody
    Bulk Sample Analysis Results

**SECTION E:**

    Floor Plan Layout Of Building (CAD)

**SECTION F:**

    Photographs Of Bulk Sampling Areas

**SECTION G:**

    Cost Estimate

**SECTION H:**

    Building Inspector Management Planner Current Certificates Of Accreditation.



**UNITED STATES POSTAL SERVICE**

**Outlease Agreement**
RMH 6.7.19

any work being performed by outside contractors must be completed before CertaPro Painters can begin the project. Lastly, if the scope of work is changed in any way from what is described above, an additional charge will be incurred. Additional work is performed at a charge rate of $60.00 per hour plus the cost of materials. The homeowner/business will be provided with a "change form" and a daily accounting of extra charges. Lastly, CertaPro Painters accepts all major credit cards. There is a 3.5% convenience charge added to the total cost of the job for the use of this option.

**WARRANTY ON ALL WORK:**
We warrant all our work for two years against blistering and peeling. This is a legal document, please see back of proposal for details. ***Please note that water damage and nail pops are structural issues with the home and NOT painting related warranty issues.***

**ACCENT WALLS:**
This proposal assumes that there are no accent walls to be painted. If you choose to add an accent wall, there will be an additional charge of $75.00 per accent wall. Additional costs are related to paint, cleaning brushes and tools, changing paint colors and additional cutting necessary between the walls.

**MORE THAN THREE (3) WALL COLORS:**
This proposal assumes the application of one wall color per room and no more than three colors in total. There will be an additional charge of $75.00 per color chosen. We may need to prime the walls if color change is drastic.

**DEEP BASE COLORS:**
On some occasions, deep base colors may require additional coats for proper coverage or depth of tone. If after two coats the look is not satisfactory a change order will be created and additional coats can be applied at a separate rate of $60.00 per man hour plus materials (if needed) to achieve the desired outcome.

**COLOR MATCHING:**
CertaPro Painters cannot ensure 100% accuracy if customer chooses to match colors. While color matching is usually accurate, it is not an exact science and human or mechanical errors may occur. If additional coatings are necessary additional charges may be incurred for labor and materials and change forms will be created.

**CEILINGS:**
Our standard proposal includes the application of one coat of finish flat paint to ceilings, with an option for a second. In most cases, one coat will provide consistent coverage and appearance. A second coat will likely be necessary if you are changing colors, there is significant drywall repair, or changing sheens to other than flat.

**NAIL HOLES:** When taking pictures off the walls, please leave nails in wall if you would like pictures returned to the same place. If you would like nail holes repaired, please take nails out.

**TIMING:** To be fair to all our customers, jobs are scheduled in the order in which the signed proposal is received.

## FINAL PRICING

| | |
|---|---|
| PRICE OF INCLUDED ITEMS ( All labor, paint, materials ) | $1885.0 |
| SALES TAX ( @ 0 %) | $0.00 |
| GRAND TOTAL | $1885.00 |
| DEPOSITS DUE | -$0.00 |
| PAYMENTS RECEIVED | -$0.00 |
| BALANCE DUE | $1885.00 |

Signature of Authorized Franchise Representative: _____ Date: 5/24/20

Payment due:



**UNITED STATES POSTAL SERVICE.**

**Outlease Agreement**
RMH 6.7.19



DECLARATION

(I/WE) HAVE READ THE TERMS STATED HEREIN, THEY HAVE BEEN EXPLAINED TO (ME/US) AND (I/WE) FIND THEM TO BE SATISFACTORY, AND HEREBY ACCEPT THEM

SIGNATURE                    DATE  5/26/20

(I/WE) HAVE EXAMINED THE JOB STATED HEREIN, THEY HAVE BEEN SHOWN TO (ME/US) AND (I/WE) FIND THEM TO BE SATISFACTORY, AND HEREBY ACCEPT THE JOB AS COMPLETE

SIGNATURE                    DATE



**UNITED STATES POSTAL SERVICE**

**Outlease Agreement**
RMH 6.7.19

---

**ACORD**

**CERTIFICATE OF LIABILITY INSURANCE**

CERTA-1

OP ID: SB

DATE (MM/DD/YYYY)
05/18/2020

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER 708-741-5222 | CONTACT Laura Ross | | |
|---|---|---|---|
| Briody Insurance Services Inc. 3412 W. 95th St. Evergreen Park, IL 60805- | PHONE (A/C, No, Ext): 708-741-5222 | | FAX (A/C, No): 708-741-5227 |
| | E-MAIL ADDRESS: laura@briodyinsurance.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED FGN Services, LLC DBA: CertaPro Painters 605 Lake St #264 Oak Park, IL 60301 | INSURER A: Markel Corporation | | |
| | INSURER B: | | |
| | INSURER C: | | |
| | INSURER D: | | |
| | INSURER E: | | |
| | INSURER F: | | |

**COVERAGES** **CERTIFICATE NUMBER:** **REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|---|
| A | X | COMMERCIAL GENERAL LIABILITY | | | 3AA342605 | 06/07/2019 | 06/07/2020 | EACH OCCURRENCE | $ 1,000,000 |
| | | CLAIMS-MADE [X] OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | POLICY [ ] PRO-JECT [ ] LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | OTHER: | | | | | | | $ |
| | | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | | OWNED AUTOS ONLY / SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | | HIRED AUTOS ONLY / NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | | $ |
| | | UMBRELLA LIAB [ ] OCCUR | | | | | | EACH OCCURRENCE | $ |
| | | EXCESS LIAB [ ] CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | | DED [ ] RETENTION $ | | | | | | | $ |
| | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y / N | | | | | | [ ] PER STATUTE [ ] OTH-ER | |
| | | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| United States Postal Service Sean Ford 475 L'Enfant Plaza SW Suite 6670 Washington, DC 20260 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.  AUTHORIZED REPRESENTATIVE  Sean P. Briody |

ACORD 25 (2016/03)

© 1988-2015 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

 **UNITED STATES POSTAL SERVICE.**

**Outlease Agreement**
**RMH 6.7.19**

**Exhibit C**

**Asbestos Survey**

### ASBESTOS SURVEY REPORT

OAK PARK MAIN POST OFFICE
901 LAKE STREET
OAK PARK, ILLINOIS 60301

PREPARED FOR:
United States Postal Service
NORTHERN ILLINOIS DISTRICT
MS. NANCY TANGNEY
(708) 260-5171

REPORT PREPARED AND SUBMITTED BY:
KEN VILKAITIS
EPA Accredited
AHERA/ASHARA
MANAGEMENT PLANNER/BUILDING INSPECTOR

STANLEY CONSULTANTS, INC.
8501 WEST HIGGINS ROAD, SUITE 730
CHICAGO, ILLINOIS 60631

DATE OF INSPECTION:
AUGUST 9-11, 1995

 **UNITED STATES POSTAL SERVICE.**

**Outlease Agreement**
**RMH 6.7.19**

The following Asbestos Survey Report on:

OAK PARK MAIN POST OFFICE
OAK PARK, ILLINOIS  60301

was compiled and written by:

KEN VILKAITIS
EPA ACCREDITED BUILDING INSPECTOR
ACCREDITATION NO.:  1092I008

This Asbestos Survey was reviewed by:

TIM CAUGHEY, C.I.H.
Certification No.:  3707

| **UNITED STATES POSTAL SERVICE** | **Asbestos Survey**<br>**Signature Page** | **Outlease Agreement**<br>Revised 3.31. 2017 RMH |

**EXECUTED BY LESSEE this** ___ **day of** 2 6   2 0 2 0

**LIMITED LIABILITY COMPANY/LIMITED LIABILITY CORPORATION (LLC)**

By executing this signature page, Lessee affirms and acknowledges receipt of the Asbestos Survey. It is Lessee's responsibility to review the Asbestos Survey a copy of which is attached hereto as Exhibit B. Lessee understands and agrees that the Asbestos Survey is provided for informational purposes only.

Name of LLC: COMPLETE FINANCIAL Services and Insurance Agency

By: JERRY R. Buford

Print Name & Title                    Signature

_____          _____
Print Name & Title                    Signature

Lessee's Address: 1837 N Rutherford Ave

City: Chicago

State: _____

Zip + 4: 60 607-5931

E-mail: Jerrybuford1@gmail.com

Lessee's Telephone Number(s): 312 618-4787 FAX: 773 688-5853

Federal Tax Identification No.: 85-1009209

DANNY Buford                    Danny Buford

Witness                              Witness

USPS RAM Outlease 10/2016

 **UNITED STATES**
**POSTAL SERVICE**

**Outlease Agreement**
RMH 6.7.19

## Exhibit D

### Rules and Regulations

**A.  APPLICABILITY**

These rules and regulations apply to all real property under the charge and control of the Postal Service, to all Lessees, tenant agencies, and to all persons entering or on such property. These rules and regulations shall be posted and kept posted at a conspicuous place on all such property.

**B.  RECORDING PRESENCE**

Except as otherwise ordered, properties must be closed to the public after normal business hours. Properties also may be closed to the public in emergency situations and at such times as may be necessary for the orderly conduct of business. Admission to properties when such properties are closed to the public may be limited to authorized individuals who may be required to sign the register and display identification documents when requested by security force personnel or other authorized individuals.

**C.  GENERAL RESTRICTIONS**

1. *Preservation of Property.* Improperly disposing of rubbish, spitting, creating any hazard to persons or things, throwing articles of any kind from a building, climbing upon the roof or any part of a building, or willfully destroying, damaging, or removing any property or any part thereof, is prohibited.

2. *Conformity with Signs and Directions.* All persons in and on the property shall comply with official signs of a prohibitory or directory nature, and with the directions of security force personnel or other authorized individuals.

3. *Inspection.* Purses, briefcases, and other containers brought into, while on, or being removed from the property are subject to inspection. However, items brought directly to a postal facility's customer mailing acceptance area and deposited in the mail are not subject to inspection, except as provided by section 274 of the Administrative Support Manual. A person arrested for violation of this section may be searched incident to that arrest.

**D.  SPECIFIC RESTRICTIONS**

1. *Disturbances.* Disorderly conduct, or conduct which creates loud and unusual noise, or which obstructs the usual use of entrances, foyers, corridors, offices, elevators, stairways, and parking lots, or which otherwise tends to impede or disturb the public employees in the performance of their duties, or which otherwise impedes or disturbs the general public in transacting business or obtaining the services provided on property, is prohibited.

2. *Gambling.* Participating in games for money or other personal property, the operating of gambling devices, the conduct of a lottery or pool, or the selling or purchasing of lottery tickets, is prohibited on postal premises. This prohibition does not apply to the vending or exchange of state lottery tickets at vending facilities operated by licensed blind persons where such lotteries are authorized by state law.

3. *Alcoholic Beverages and Drugs.* A person under the influence of an alcoholic beverage or any drug that has been defined as a "controlled substance" may not enter postal property or operate a motor vehicle on postal property. The possession, sale, or use of any "controlled substance" (except when permitted by law) or the sale or use of any alcoholic beverage (except as authorized by the Postmaster General or designee) on postal premises is prohibited. The term "controlled substance" is defined in section 802 of title 21 U.S.C.

4. *Smoking and Sale of Tobacco Products in Vending Machines.*

   a.  Smoking (defined as having a lighted cigar, cigarette, pipe, or other smoking material) is prohibited in all postal buildings and office space, including public lobbies.

   b.  The sale of tobacco products in vending machines located in or around postal property is prohibited. The distribution of free samples of tobacco products in or around postal property is also prohibited. The term "tobacco product" means cigarettes, cigars, little cigars, pipe tobacco, smokeless tobacco, snuff, and chewing tobacco.

 **UNITED STATES POSTAL SERVICE.**

**Outlease Agreement**
RMH 6.7.19

5. *Soliciting, Electioneering, Collecting Debts, Vending, and Advertising.* Soliciting alms and contributions, campaigning for election to any public office, collecting private debts, commercial soliciting and vending, (including but not limited to, the vending of newspapers and other publications), the display or distribution of commercial advertising on postal premises, soliciting signatures on petitions, polls, or surveys (except as otherwise authorized by Postal Service regulations), and impeding ingress to or egress from post offices are prohibited. These prohibitions do not apply to:

   a. Commercial or nonprofit activities performed under contract with the Postal Service or pursuant to the provisions of the Randolph-Sheppard Act;

   b. Posting notices on bulletin boards as authorized in POSTAL OPERATIONS MANUAL 221.525;

   c. The solicitation of Postal Service and other federal military and civilian personnel for contributions by recognized agencies as authorized by the Manual on Fund Raising Within the Federal Service issued under Executive Order 10927 of March 13, 1961.

6. *Leafleting, picketing, etc.* Leafleting, distributing literature, picketing, and demonstrating by members of the public are prohibited in lobbies and other interior areas of postal buildings open to the public. Public assembly and public address, except when conducted or sponsored by the Postal Service, are also prohibited in lobbies and other interior areas of postal buildings open to the public

7. *Voter registration.* Voter registration may be conducted on postal premises only in full accordance with the requirements of 39 CFR 232.1(h)(4).

8. *Placement of furniture, etc.* Except as part of postal activities or activities associated with those permitted under paragraph D.7 above, no tables, chairs, freestanding signs or posters, structures, or furniture of any type may be placed in postal lobbies or on postal walkways, steps, plazas, lawns or landscaped areas, driveways, parking lots, or other exterior spaces.

9. *Depositing Literature.* The depositing or posting of handbills, flyers, pamphlets, signs, posters, placards, or other literature except official postal and other governmental notices and announcements on the grounds, walks, driveways, parking and maneuvering area, exteriors of buildings and other structures, or on the floors, walls, stairs, racks, counters, desks, writing tables, window ledges, or furnishings, in interior public areas on postal premises is prohibited. This prohibition does not apply to:

   a. Posting notices on bulletin boards as authorized in 221.525, POSTAL OPERATIONS MANUAL.

   b. Interior space assigned to tenancies for their exclusive use.

10. *Photographs for News, Advertising, or Commercial Purposes.*

    Except as prohibited by official signs or the directions of security force personnel or other authorized personnel or a federal court order or rule, photographs for news purposes may be taken in entrances, lobbies, foyers, corridors, or auditoriums when used for public meeting. Other photographs may be taken only with the permission of the local postmaster or installation head.

11. *Dogs and Other Animals.* Dogs and other animals, except those used to assist persons with disabilities, must not be brought upon postal property for other than official purposes.

12. *Vehicular and Pedestrian Traffic*

    a. Drivers of all vehicles in or on postal premises shall drive in a careful and safe manner at all times and shall comply with signals and directions of security force personnel, other authorized individuals, and all posted traffic signs.

    b. The blocking of entrances, driveways, walks, loading platforms, or fire hydrants is prohibited.

    c. Parking without authority, parking in unauthorized locations or in locations reserved for other persons, or continuously in excess of 18 hours without permission, or contrary to the direction of posted signs is prohibited. The section may be supplemented by the postmaster or installation head from time to time by the issuance and posting of specific traffic directives as may be required. When so issued and posted, such directives shall have the same force and effect as if made a part thereof.

 **UNITED STATES POSTAL SERVICE.**

**Outlease Agreement**
**RMH 6.7.19**

13. *Weapons and Explosives*. No person while on postal property shall carry firearms, other dangerous or deadly weapons, or explosives, either openly or concealed, or store the same on postal property, except for official purposes.

**E.    NONDISCRIMINATION**

There must be no discrimination by segregation or otherwise against any person or persons because of race, color, religion, national origin, sex, age (persons 40 years of age or older are protected), reprisal (discrimination against a person for having filed or for having participated in the processing of an EEO complaint_29 CFR 1613.261-262), or physical or mental handicap, in furnishing, or by refusing to furnish to such person or persons the use of any facility of a public nature, including all services, privileges, accommodations, and activities provided on postal property.

**F.    PENALTIES AND OTHER LAW**

1.  Alleged violations of these rules and regulations are heard and the penalties prescribed herein are imposed, either in a Federal District Court or by a federal magistrate in accordance with applicable court rules. Questions regarding such rules should be directed to the regional counsel for the region involved.

2.  To the extent applicable under 39 CFR Part 232, whoever shall be found guilty of violating the rules and regulations in this notice while on property under the charge and control of the Postal Service is subject to fine of not more than $50 or imprisonment of not more than 30 days or both. Nothing contained in these rules and regulations shall be construed to abrogate any other federal laws or regulations or any state or local laws and regulations applicable to any area in which the property is situated.

3.  Members of the U.S. Postal Security Force shall exercise the powers of special policemen provided by 40 U.S.C. 318 and shall be responsible for enforcing the regulations in this notice in a manner that will protect Postal Service property. Postal inspectors, Office of Inspector General Criminal Investigators, and other persons designated by the chief Postal Inspector may likewise enforce regulations in this notice.

| Form **LLC-5.5** | **Illinois**<br>**Limited Liability Company Act**<br>**Articles of Organization** | **FILE # 08672911** |
|---|---|---|

| Secretary of State  Jesse White<br>Department of Business Services<br>Limited Liability Division<br>www.cyberdriveillinois.com | **Filing Fee:** $150<br><br>**Approved By:** __TLB__ | **FILED**<br>**MAY 07 2020**<br>**Jesse White**<br>**Secretary of State** |
|---|---|---|

1. Limited Liability Company Name: COMPPLETE FININCIAL SERVICE AND INSURANCE AGENCY

   LLC

2. Address of Principal Place of Business where records of the company will be kept:
   901 W LAKE ST SUITE 207

   OAK PARK, IL 60301

3. The Limited Liability Company has one or more members on the filing date.

4. Registered Agent's Name and Registered Office Address:

   STANLEY G. BUFORD
   901 LAKE ST SOITE 207
   OAK PARK, IL 60301

5. Purpose for which the Limited Liability Company is organized:
   "The transaction of any or all lawful business for which Limited Liability Companies may be organized under this Act."

6. The LLC is to have perpetual existence.

7. Name and business addresses of all the managers and any member having the authority of manager:

   BUFORD JERRY R
   1837 N RUTHERFORD
   CHICAGO, IL 60707

8. **Name and Address of Organizer**
   I affirm, under penalties of perjury, having authority to sign hereto, that these Articles of Organization are to the best of my knowledge and belief, true, correct and complete.

   Dated: MAY 07, 2020                    JERRY R.BUFORD
                                          1837 N RUTHERFORD AVE
                                          CHICAGO, IL 60707

   This document was generated electronically at www.cyberdriveillinois.com

 **UNITED STATES POSTAL SERVICE.**

**Outlease Agreement**
RMH 6.7.19

**Exhibit E**

**General Conditions**

1. **Contingent Fees/Brokers**

   a. The Lessee warrants that no person or selling agency has been employed or retained to solicit or obtain this Outlease for a commission, percentage, brokerage, or contingent fee, except bona fide employees or bona fide, established commercial or selling agencies employed by the Lessee for the purpose of obtaining business.

   b. For licensed employees or established commercial brokerage agencies employed by the parties for the purpose of leasing space for a brokerage commission, each party agrees to pay its respective agent a commission in accordance with the respective agreement(s) between the respective party and its agent/broker.

   c. For breach or violation of this warranty, the Postal Service has the right to annul this contract without liability or to deduct from the contract price or otherwise recover the full amount of the commission, percentage, brokerage fee, or contingent fee.

2. **Non-Discrimination:** The Lessee agrees that they will not discriminate by segregation or otherwise against any person or persons because of race, color, religion, national origin, sex, age (persons 40 years of age or older are protected), reprisal (discrimination against a person for having filed or for having participated in the processing of an EEO complaint 29 CFR 1613.261-262), or physical or mental handicap, in furnishing, or by refusing to furnish to such person or persons the use of any facility of a public nature, including all services, privileges, accommodations, and activities provided herein.

3. **Relocation:** Lessee acknowledges that it acquires no right by virtue of execution of this Outlease to claim any benefits under Title 39, Code of Federal Regulations, Part 777 (Relocation Assistance and Real Property Acquisition Policies).

4. **Gratuities or Gifts (Clause 1-5: March 2006)**

   a. The Postal Service may terminate this contract for default if, after notice and a hearing, the Postal Service Board of Contract Appeals determines that the Lessee or the Lessee's agent or other representative:

   i. Offered or gave a gratuity or gift (as defined in 5 CFR 2635) to an officer or employee of the Postal Service; and

   ii. Intended by the gratuity or gift to obtain a contract or favorable treatment under a contract.

   b. The rights and remedies of the Postal Service provided in this clause are in addition to any other rights and remedies provided by law or under this contract.

5. **Incorporation by Reference:** In addition to the foregoing, the following clauses are incorporated in this contract by reference. The text of incorporated terms may be found in the Contract Clauses section of the Postal Service's Supplying Principles and Practices manual, which is accessible on-line or upon request.

Clause 9-7, Equal Opportunity (March 2006)[1]
Clause 9-13, Affirmative Action for Handicapped Workers (March 2006)[2]
Clause 9-14, Affirmative Action for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (February 2010)[3]

---

[1] For contracts aggregating payments of $10,000 or more.
[2] For contracts aggregating payments of $10,000 or more.
[3] For contracts aggregating payments of $25,000 or more.

| Form **W-9** | **Request for Taxpayer** | **Give Form to the** |
|---|---|---|
| (Rev. November 201—) | **Identification Number and Certification** | **requester. Do not** |
| Department of the Treasury | | **send it to the IRS.** |
| Internal Revenue Service | ► Go to *www.irs.gov/FormW9* for instructions and the latest information. | |

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

COMPLETE FINANCIAL SERVICES AND INSURANCE L.L.C.

**2** Business name/disregarded entity name, if different from above

SAME

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only one of the following seven boxes.

☐ Individual/sole proprietor or single-member LLC   ☐ C Corporation   ☐ S Corporation   ☐ Partnership   ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ►

Note: Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is not disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ►

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.

1101 LAKE ST SUITE 207

**6** City, state, and ZIP code

OAK PARK IL 60301

**7** List account number(s) here (optional)

Requester's name and address (optional)

**Part I**  **Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

Social security number

3 6 0 - 5 4 - 0 6 3 3

or

Employer identification number

8 5 - 1 0 0 9 2 0 9

**Part II**  **Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign Here**  Signature of U.S. person ►          Date ► 5/26/2020

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding, later.*

Cat. No. 10231X                                Form **W-9** (Rev. 11-2017)

 **ACORD®**

## CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 05/26/2020 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| FOREST INSURANCE | PHONE (A/C, No, Ext): (708) 383-9000 | | FAX (A/C, No): (708) 689-8388 |
| 7310 Madison St. | E-MAIL ADDRESS: | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Forest Park                     IL  60130-1706 | INSURER A : Hartford Underwriters Ins Co | | 30104 |
| INSURED | INSURER B : | | |
| Complete Financial Services & Insurance Agency LLC | INSURER C : | | |
| Jerry R Buford | INSURER D : | | |
| 901 Lake St., Ste 207 | INSURER E : | | |
| Oak Park                        IL  60301 | INSURER F : | | |

## COVERAGES          CERTIFICATE NUMBER:   Master 2020          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | ☒ COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ 1,000,000 |
| | ☐ CLAIMS-MADE ☒ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 1,000,000 |
| | | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | 83SBMAG2NN | 07/01/2020 | 07/01/2021 | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | ☒ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | ☐ OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY       Y / N | | | | | | ☐ PER STATUTE ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

United States Postal Service is named as Additional Insured.
In the event of any reduction of coverage under, or termination or cancellation of, the policiy referenced above, 30 days written notice will be priovided to the United States Postal Service.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| United States Postal Service Attn: Sean Ford 475 L'Enfant Plaza, Ste 6670 Washington                    DC  20260 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

** INBOUND NOTIFICATION : FAX RECEIVED SUCCESSFULLY **
Case: 1:25-cv-01707 Document #: 1 Filed: 02/19/25 Page 37 of 49 PageID #:37

| TIME RECEIVED | REMOTE CSID | DURATION | PAGES | STATUS |
| --- | --- | --- | --- | --- |
| May 27, 2020 at 1:19:28 PM CDT | 7736885853 | 36 | 1 | Received |

05/27/2020  13:13  7736885853                    JERRY R.BUFORD                    #6634 P.001/001

ENABLING RESOLUTION

(NAME OF COMPANY)

(Address)

(City, State, Zip)

*Complete FSI Agency LLC*

BE IT RESOLVED that we, the duly elected officers of _____ (company, name) _____ a _____ (type of entity) _____ organized in the State of __ILL__, do hereby appoint *JERRY R.Buford* as our authorized representative to execute a Lease with the United States Postal Service for property located at *901 ARES South 209*. This Lease shall be deemed binding upon all members of this organization collectively.

SIGNED this *MAY* day of *26*, 2020.

| Authorized Signature | Printed Name | Title |
| --- | --- | --- |
| *[signature]* | *JERRY R.Buford* | *Manager* |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

(Please also include the Authorized Representative's signature above in addition to officers)

Facility Name: _OAK PARK POST-OFFICE_       Fin/Sub No._____

Address: _____901 LAKEST_____       City, ST, ZIP: _OAK PARK IL 6030_/

## Real Estate Conflict of Interest Certification

To avoid actual or apparent conflicts of interest, the United States Postal Service ("Postal Service") requires the following certification from you as a potential Tenant/Landlord/Licensor/Supplier/Contractor to the Postal Service. Please check all that apply in item A below. Further, please understand that the Postal Service will be relying on the accuracy of the statements made by you in this certification in determining whether to proceed with any possible transaction with you.

I, _JERRY R. BUFORD_____ hereby certify to the Postal Service as follows:

[PRINT: name of potential Tenant/Landlord/ Licensor/Supplier/Contractor]

A.      (Check all that apply) I am:

(i) _____ A Postal Service employee;

(ii) _____ The spouse of a Postal Service employee;

(iii) _____ A family member of a Postal Service employee; (*Relationship*) _____

(iv) _____ An individual residing in the same household as a Postal Service employee;

(v) _____ I am one of the individuals listed in (i) through (iv) above AND a controlling shareholder or owner of a business organization leasing or licensing space or intending to lease or license space to/from the Postal Service; OR

(vi) _✓_ None of the above.

B.      (Complete as applicable):

i.      I have the following job with the Postal Service(*Title*)_____

(*Location*)_____

ii.     My Spouse who works for the Postal Service holds the following job:

(*Title*)_____ (*Location*)_____

iii.    My family member who works for the Postal Service holds the following job:

(*Title*)_____ (*Location*)_____

iv.     My household member who works for the Postal Service holds the following job: ___

(*Title*)_____ (*Location*)_____

C.      If you have checked "none of the above" and during the lease or license term or any renewal term, you do fall into any of the categories listed in A (i) through (v) above, you shall notify the Postal Service Contracting Officer in writing within 30 days of the date you fall into any of the such categories and shall include an explanation of which of the above categories now applies.

D.      The person signing this certification has full power of authority to bind the potential Tenant/Landlord/ Supplier/Contractor named above.

Executed this _MAY_ day of _26_ , _2020_ by

BY: _____

[Insert Signature]

BY: _JERRY R. BUFORD_

[PRINT: name of entity or person]

Title: _OWNER_

[Insert title]

Effective March 1, 2014 (Revision 2)       Appendix A_Conflict of Interest Certification

Exhibit B

** INBOUND NOTIFICATION : FAX RECEIVED SUCCESSFULLY **

TIME RECEIVED                REMOTE CSID              DURATION    PAGES    STATUS
March 1, 2021 at 3:10:52 PM CST    17083588900              69          3        Received
05/23/2001 2:08AM FAX  17083588900          COMPLETE FSI INSURANCE                    ☑0001/0003

 **UNITED STATES POSTAL SERVICE.**

**Outlease Agreement**

Oak Park Main Office
901 Lake Street
Oak Park, IL 60301

AMENDMENT NO: __01__

FIN/SUB NO: 165790-G01

THIS FIRST AMENDMENT TO OUTLEASE AGREEMENT (this "*Amendment*"), is entered into by and between the United States Postal Service ("Postal Service"), and **Complete Financial Services and Insurance Agency LLC**

## RECITALS

    A.    Postal Service and Lessee entered into that certain Outlease Agreement, with an Effective Date of __July 01, 2020__ (the "Outlease"), for the above office space in the above described postal facility.

    B.    Postal Service and Lessee desire to modify the Outlease on the terms and conditions set forth in this Amendment.

  NOW, THEREFORE, for valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

    1.    The last sentence of Paragraph 1 - Premises of the Outlease is modified to state:

The parties agree that the rentable area of the premises is approximately 658 rentable square feet (rsf), which is comprised of:

        a.    Room 207, 207A and 208
            i.    207 and 207A: 321 rsf
           ii.    208: 337 rsf

This amendment in space shall extend to and control the Exhibits included in the original agreement.

    2.    Paragraph 3 – Rental Rate, Section 3.a is modified as follows:

    3a.

| Outlease Term | Monthly Rent | Annual Rent |
|---|---|---|
| 04/01/2021 – 06/30/2021 | $949.00 | $11,388.00 |
| 07/01/2021 – 6/30/2022 | $977.00 | $11,724.00 |
| 07/01/2022 – 6/30/2023 | $1,006.00 | $12,072.00 |
| 07/01/2023 – 6/30/2024 | $1,037.00 | $12,444.00 |
| 07/01/2024 – 6/30/2025 | $1,068.00 | $12,816.00 |

 **UNITED STATES**
**POSTAL SERVICE.**

**Outlease Agreement**

3.    All defined terms used in this Amendment shall have the same meaning as set forth in the Agreement, unless otherwise specified herein.

4.    Except as herein amended, the Agreement remains the same and in full force and effect. In the event of a conflict between the provisions of this Amendment and the provisions of the Agreement, the provisions of this Amendment shall control.

5.    This Amendment may be executed and delivered in one or more counterparts. Transmission of this Amendment by facsimile or electronic mail shall be deemed transmission of the original Amendment for all purposes.

6.    This Amendment shall be effective on the date executed by the Postal Service Contracting Officer designated below.

**[Signature page follows.]**

 **UNITED STATES POSTAL SERVICE.**                    **Outlease Agreement**

IN WITNESS WHEREOF, the parties have executed this Amendment on the dates written below.

**Postal Service:**

UNITED STATES POSTAL SERVICE

By: Joseph Lowe

> Digitally signed by Joseph Lowe
> DN: cn=Joseph Lowe, o, ou,
> email=joseph.d.lowe@usps.gov, c=US
> Date: 2021.03.05 14:40:08 -05'00'

Name: Joseph D. Lowe

Its: Contracting Officer

Date: 3/5/2021

**LESSEE:**

By:

By: Complete FSI Agency LLC

Name: JERRY L Buford

Title: CEO

Date: 03/01/2021

Exhibit C

 **UNITED STATES POSTAL SERVICE**

<u>Via Certified Mail, Return Receipt Requested</u>

May 6, 2024

Complete Financial Services and
  Insurance Agency LLC
901 Lake Street, Suite 207
Oak Park, IL 60301

Re:  Outlease Agreement having an Effective Date of July 1, 2020 between the United States Postal Service, as landlord, and Complete Financial Services and Insurance Agency LLC, as tenant, as amended by Amendment No. 1 dated March 5, 2021 (said Outlease Agreement, as amended, the "Lease") with respect to the premises (the "Premises") located at Rooms 207, 207A and 208 in the building located at 901 Lake Street, Oak Park, IL 60301

To whom it may concern:

Pursuant to Section 19 of the Lease, this is to notify you that you are in default of the Lease because of your failure to pay rent.   You have not paid rent from October 1, 2021 through the date hereof (except we did receive rent for December 2021) and the total outstanding amount due on the date hereof is $34,424.50.  This consists of $31,295 in rent and $3,129.50 in late fees.

If this outstanding amount is not paid within ten (10) days from the date this letter is deposited in the mail, then this shall be deemed an "Event of Default" under the Lease entitling us to, among other things, evict you from the leased premises and sue you for all rent arrearages.

This letter supersedes the letter which I sent to you dated March 11, 2024.

Please feel free to call me at 202-268-4463 if you would like to discuss this further.

Sincerely,

*Jeff Feigelson*

Jeff Feigelson
Attorney at United States
Postal Service

475 L'ENFANT PLAZA SW, ROOM 6413
WASHINGTON DC 20260-1101
TEL 202-268-4463
JEFF.FEIGELSON@USPS.GOV

Exhibit D


**UNITED STATES**
**POSTAL SERVICE**

<u>Via Certified Mail, Return Receipt Requested</u>

September 10, 2024

Complete Financial Services and
  Insurance Agency LLC
901 Lake Street, Suite 207
Oak Park, IL 60301

Re:  Termination & Demand for Immediate Possession – Outlease Agreement having an Effective Date of
July 1, 2020 between the United States Postal Service, as landlord, and Complete Financial Services and
Insurance Agency LLC ("Tenant"), as tenant, as amended by Amendment No. 1 dated March 5, 2021
(said Outlease Agreement, as amended, the "Lease") with respect to the premises (the "Premises")
located at Rooms 207, 207A and 208 in the building located at 901 Lake Street, Oak Park, IL 60301

To whom it may concern:

Tenant's failure to cure the default of the Lease as notified in the Postal Service's March 11, 2024,
default letter has resulted in the termination of the Lease. Pursuant to the March 11 letter, you were
required to cure by March 21, 2024. Because you failed to do so, the lease terminated on that date. *See*
Lease, ¶11.a. At that time, you should have surrendered the Premises. *See* ¶11.a.-b. Accordingly, the
Postal Service hereby demands that you vacate the property you lease from the Postal Service under the
Outlease Agreement no later than 5:00 p.m. on Friday, September 13.

Among other remedies, pursuant to 735 ILCS 5/9-202, you are liable for double the normal rent due for
all the time that you remain in possession of the property subsequent to termination.

Please call me at 202-268-4463 or email me at <u>Jeff.Feigelson@usps.gov</u> to let me know when you have
left the property.

Sincerely,

*Jeff Feigelson*
Jeff Feigelson
Attorney at United States
Postal Service

475 L'Enfant Plaza SW, Room 6413
Washington DC 20260-1101
Tel 202-268-4463
JEFF.FEIGELSON@USPS.GOV

Exhibit E


**UNITED STATES**
**POSTAL SERVICE**

## CERTIFICATE OF INDEBTEDNESS

Debtor Name
and Address:
Complete Financial Services and Insurance Agency LLC
901 Lake Street, Suite 207
Oak Park, IL 60301

Total debt due the United States Postal Service as of November 1, 2024: $41,439.20.

I certify that the records of the United States Postal Service show that Complete Financial Services and Insurance Agency LLC ("Complete Financial") is indebted to the Postal Service as of November 1, 2024: $41,439.20. The indebtedness increases by $1,068.00 per month for rent and by $106.80 per month in contractual late fees.

Complete Financial and the United States Postal Service entered into an Outlease Agreement to begin on July 1, 2020, and to end on June 30, 2025. The Outlease Agreement was amended in March 2021 to include additional leased property in the same building. The Outlease Agreement as amended leased the real property located at 901 Lake Street, Suites 207, 207A and 208, Oak Park, IL 60301 (the "Property"). The rent schedule as amended is as follows:

| Months | Monthly Rent | Annual Rent |
|---|---|---|
| 04/01/2021- 06/30/2021 | $949.00 | $11,388.00 |
| 07/01/2021 – 06/30/2022 | $977.00 | $11,724.00 |
| 07/01/2022 - 06/30/2023 | $1,006.00 | $12,072.00 |
| 07/01/2023- 06/30/2024 | $1,037.00 | $12,444.00 |
| 07/01/2024 - 06/30/2025 | $1,068.00 | $12,816.00 |

Complete Financial has not paid the monthly amount due starting October 1, 2021, except for December 2021. Complete Financial has not paid any of the late fees. As of November 1, 2024, Complete Financial is 37 months delinquent on its payment. Accordingly, Complete Financial owes the Postal Service the following:

| Delinquent months/years | Amount per month | Totals | Late fees |
|---|---|---|---|
| Oct. & Nov. 2021; Jan. – June 2022 | $977.00 | $7,816.00 | $781.60 |
| July 2022 – June 2023 | $1,006.00 | $12,072.00 | $1,207.20 |
| July 2023 – June 2024 | $1,037.00 | $12,444.00 | $1,244.40 |
| July 2024 – Nov. 2024 | $1,068.00 | $5,340.00 | $534.00 |
| Total (through Nov. 2024) | | $37,672.00 | $3,767.20 |

*UNITED STATES*
*POSTAL SERVICE*

On May 6, 2024, the Postal Service sent a notification of default letter to Complete Financial pursuant to Section 19 of the Outlease, noting that if payment in full was not received within ten days, that would constitute an event of default under the Outlease, which entitles the Postal Service to evict Complete Financial and sue for rent arrearage. Complete Financial did not respond.

Complete Financial has not paid rent for more than three years. This matter is well beyond the point where Complete Financial can catch up or negotiate a payment plan. There is no indication that Complete Financial has any interest in voluntarily fulfilling its obligations under the Outlease Agreement. The only remedy is an eviction and collection action.

CERTIFICATION:  Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

E-SIGNED by LETITIA Y RUSSELL
on 2024-12-09 21:19:06 GMT _____        December   06 , 2024
Name: Letitia Russell                               Date
Title:    Contracting Officer